UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS HOLMES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DR. L. OVERALL, DR. GARDNER, REDNOUR, UNKNOWN PARTY DENTAL MEDICAL DIRECTOR and WEXFORD HEALTH SOURCES, INC.,<br><br>　　　　　Defendant. | Case No. 13-cv-290-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. 74, 76 & 80). Plaintiff Curtis Holmes has responded to defendant Dr. L. Overall's motion (Doc. 82) and to defendant Dr. Gardner's motion (Doc. 81), and the defendants have responded to Holmes' motion (Docs. 85 & 86). Holmes challenges the conditions of his confinement at Menard Correctional Center under 42 U.S.C. § 1983, alleging an Eighth Amendment violation caused by deliberate indifference to a serious dental need to have a painful tooth extracted.

**I.      Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. If the moving party bears the burden of persuasion on an issue at trial, he must present evidence that conclusively establishes he is entitled to a judgment as a matter of law. The movant must establish that no reasonable jury could find for the non-moving party. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.     Facts[1]

Holmes was an inmate at Menard Correctional Center ("Menard") at all relevant times. At Menard, when an inmate wants to see a dentist for a problem, he submits a medical request slip, and a dental assistant or receptionist places him on a dental appointment schedule. Illinois Department of Corrections ("IDOC") Administrative Directive 04.03.102 § F.5.b generally requires inmates to be seen for the problem within 14 days of the request unless he is already scheduled to be seen for the problem. Inmates in general population are scheduled at the dental health care unit, where they report to the dentist for their appointment. Inmates in segregation are scheduled on the segregation dental list, where the dentist is assigned to see the inmates in the segregation unit dental facility. Separate schedules are maintained for the dental health care unit and the segregation dental unit. Each day, dentists, whether they are assigned to the dental health care unit or the segregation dental unit, are given a daily list of the inmates they are scheduled to see that day. After seeing an inmate, they note on the list the treatment plan and comments. At the end of the day, the dentists turn in their daily lists to the dental assistant or receptionist to arrange any necessary treatment plan or follow up. Dr. Overall was the chief dentist overseeing the entire inmate dental care and treatment program at Menard.

While in general population, Holmes developed a dental problem. Dr. Gardner saw him on May 10, 2011, and diagnosed him with pericoronitis, an inflammation of the gum around a wisdom tooth. Pericoronitis can sometimes be resolved through a course of antibiotics but

---

[1] Holmes cites to his Amended Complaint as proof of several facts, but that document is not able to be considered on summary judgment. Although Holmes certifies that the Amended Complaint is in compliance with Federal Rules of Civil Procedure 11(a) and (b), it is not sworn or declared under penalty of perjury. To be used at the summary judgment stage, testimony must be sworn, for example, in an affidavit or deposition, or declared as true under penalty of perjury pursuant to 28 U.S.C. § 1746. If it is not, the Court must disregard it. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985); *see, e.g., Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 268-69 (7th Cir. 1994). Nevertheless, the Court has included the facts Holmes supports with his pleading because they are immaterial to the resolution of the pending motions.

sometimes requires extraction of the tooth. Dr. Gardner prescribed Holmes ten days of an antibiotic (Penicillin) and six days of an anti-inflammatory pain reliever (Motrin). He expected that after six days the antibiotic would have reduced the infection and that the tooth would not hurt anymore. Dr. Gardner further noted in Holmes' dental record that the tooth should be extracted on Holmes' next dental visit. Dr. Gardner told Holmes his tooth would be extracted within the following month. Holmes was scheduled for an extraction on June 2, 2011, but he was not told of this appointment. Before that follow-up appointment, Dr. Gardner resigned from his position at Menard. He did not see Holmes again or consult with any other dentist at Menard about Holmes before his departure.

On June 2, 2011, the day Holmes was scheduled for an extraction, Dr. Overall was working at the dental health care unit. Holmes was on her schedule of inmates to see that day, but he did not show up for his appointment. Dr. Overall learned he was in segregation and therefore was not able to report to the dental health care unit. She ordered that he be placed on the segregation dental unit schedule, and left the scheduling of that appointment to the receptionist. She did nothing further with respect to Holmes. Holmes was not placed on the segregation dental unit schedule to have his tooth extracted, and he was never called or provided a medical pass to have the tooth extracted.

On June 16, 2011, a dental assistant indicated in Holmes' dental file that a dentist indicated Holmes should be rescheduled for an evaluation of his wisdom tooth if he submits another medical request. No evidence connects Dr. Overall to this notation. Holmes' tooth extraction was not rescheduled.

Holmes continued to suffer pain and other side effects of his infected tooth and submitted multiple requests for treatment. He filed a grievance on November 15, 2011, and an emergency

grievance on January 25, 2012, and on February 5, 2012, sent a letter to the IDOC medical director.  He even had another inmate hand-deliver a medical request slip to the health care unit for him.  Of course, Dr. Gardner was not aware of these requests because he no longer worked at Menard.  No evidence suggests Dr. Overall knew of any of these requests for treatment.

On February 7, 2012, Holmes saw another dentist at Menard, Dr. Henderson, who again diagnosed Holmes with pericoronitis and prescribed antibiotics for ten days and anti-inflammatory pain relievers for five to seven days.  Dr. Henderson made a notation in Holmes' file indicating extraction was a high priority, and on February 24, 2012, he extracted Holmes' problem tooth.

Holmes filed this lawsuit in March 2013 arguing Dr. Gardner and Dr. Overall were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  All parties now ask for summary judgment.

### III.     Analysis

The Eighth Amendment's prohibition on the unnecessary and wanton infliction of pain forbids deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).  To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an objectively serious medical need and (2) that the official knew that the medical need was serious but disregarded it.  *Johnson*, 444 F.3d at 584; *see Burton v Downey*, 805 F.3d 776, 784 (7th Cir. 2015).  No party disputes that Holmes' dental needs were objectively serious.  Therefore, the critical question is whether a reasonable jury could find the defendants were deliberately indifferent to those needs.

An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and

then act with indifference to that need."). "Something more than negligence or even malpractice is required." *Pyles v. Fahim*, 771 F.3d 403, 407 (7th Cir. 2014); *see Burton*, 805 F.3d at 784. "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (citing *Estelle*, 429 U.S. at 104-05). It can also arise where a treatment decision was "blatantly inappropriate," *Pyles*, 771 F.3d at 409 (treatment that is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment"). The prisoner must show that the defendant's conduct was intentional or criminally reckless; neither simple nor gross negligence is sufficient to establish deliberate indifference. *Burton*, 805 F.3d at 784; *Johnson*, 444 F.3d at 585; *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991).

<u>Dr. Gardner</u>

There is no evidence from which a reasonable jury could conclude that Dr. Gardner was deliberately indifferent to Holmes' dental needs. When Dr. Gardner saw Holmes on May 10, 2011, he examined him, diagnosed his problem, prescribed a course of medication he thought could remedy Holmes dental problem, and ordered that Holmes' tooth be extracted on his next dental visit, another possible treatment for Holmes' problem. Indeed, his order for a future extraction was noted, and an extraction appointment was scheduled based on that note. No evidence suggests this course of conduct was blatantly inappropriate, for example, because the course of medications was not long enough or was prescribed instead of an emergency extraction. Indeed, Holmes admits that a similar response by Dr. Henderson in February 2012 was not deliberately indifferent. There is simply no evidence from which a reasonable jury could conclude that Dr. Gardner in any way disregarded Holmes' medical needs in May 2011.

To the extent Holmes argues Dr. Gardner's conduct might have been inconsistent with IDOC rules regarding the speed with which a dental examination should have been scheduled, there is no evidence of when Holmes submitted a medical request slip, whether his May 10, 2011, visit was within 14 days of that request, or that Dr. Gardner was personally involved in scheduling the inmates he saw each day. To the extent Holmes argues Dr. Gardner could have improved the continuity of Holmes' care when he left Menard, evidence that Dr. Gardner could have performed his job better or gone beyond its minimum requirements does not show deliberate indifference as long as he responded reasonably to Holmes' problems. In any case, the foregoing two arguments speak to negligence, not deliberate indifference. Finally, to the extent Holmes argues Dr. Gardner ignored his continuing dental problems when he filed grievances and other documents later in the fall, no evidence shows Dr. Gardner knew of Holmes' continuing complaints or was in a position to address them since he no longer worked at Menard.

For these reasons, Dr. Gardner is entitled to summary judgment.

<u>Dr. Overall</u>

There is no evidence from which a reasonable jury could conclude that Dr. Overall was deliberately indifferent to Holmes dental needs. Dr. Overall was unable to see Holmes to extract his tooth on June 2, 2011, as scheduled because he had been placed in segregation and could not report to the dental health care unit. When Dr. Overall learned of this, she ordered that he be scheduled for a dental visit in the segregation dental unit in the ordinary way such visits would be added to the schedule: she made a note of it in Holmes' record, which in the ordinary course would have prompted the dental assistant or receptionist to schedule the segregation unit appointment. Thus, Dr. Overall took reasonable steps to order that Holmes receive the treatment she was unable to give him because he had been moved to segregation. This does not amount to

7

deliberate indifference but instead reflects a reasonable response to Holmes' medical needs in light of his confinement circumstances.

To the extent Holmes argues Dr. Overall should have followed up on his care after he failed to show up for his visit with her, no evidence suggests that after ordering a segregation dental unit appointment, the failure to do more was a blatantly inappropriate response such that it amounted to deliberate indifference. To the extent Holmes believes Dr. Overall, as chief dentist, was deliberately indifferent because employees she supervised failed in their jobs of scheduling a segregation dental unit appointment as she ordered, that argument fails. The doctrine of *respondeat superior* is not applicable to § 1983 actions, and there is no allegation Dr. Overall was personally responsible for the scheduling failure, which was outside her job duties. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Holmes also asserts Dr. Overall was deliberately indifferent for failing to prescribe him more medication when she was unable to see him on June 2, 2011, but there is no evidence she was even aware he continued to be in pain after Dr. Gardner's course of antibiotic treatment. Without actually knowing of Holmes' condition, she cannot be deliberately indifferent to that condition. There is also no evidence from which a reasonable jury could conclude that Dr. Overall was personally responsible for the June 16, 2011, instruction not to reschedule Holmes unless he filed another medical request slip or that any such instruction was done with actual knowledge of Holmes' medical condition. Finally, to the extent Holmes argues Dr. Overall ignored his dental problems when he filed grievances and other documents later in the fall, no evidence shows Dr. Overall knew of Holmes' continuing complaints.

For these reasons, Dr. Overall is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Dr. Overall's and Dr. Gardner's motions for summary judgment (Docs. 74 & 76);

- **DENIES** Holmes' motion for summary judgment (Doc. 80); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   March 9, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
